# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Marie Theresa Nolan, individually, and as special
administratrix on behalf of Estate of John Benjamin
Kraai,

     Plaintiff

v.

City of Las Vegas, et al.,

     Defendants

2:15-cv-01346-JAD-CWH

**Order Granting in Part and Denying in
Part Motion to Dismiss, Dismissing
Federal-law Claims with Prejudice,
Dismissing State-law Claims without
Prejudice, and Closing Case**

[ECF 12]

     This § 1983 and wrongful-death case arises from the untimely death of John Benjamin Kraai from a gunshot wound inflicted by defendant Fred Dein.  Kraai's mother Marie Theresa Nolan sues Dein and Dein's business, the City of Las Vegas, the city manager, Las Vegas Fire & Rescue, and the fire chief (collectively "the city defendants") to recover for Kraai's death.[1]  The city defendants move to dismiss all of Nolan's claims against them, arguing that there is no right to city-provided emergency-medical services.[2]  I agree that there is no federally recognized right to city-provided emergency-medical services, so I dismiss Nolan's § 1983 claims with prejudice, decline to exercise supplemental jurisdiction over her state-law claims, dismiss those claims without prejudice to their refiling in state court, and close this case.[3]

---

[1] *See* ECF No. 1.

[2] *See* ECF No. 12.

[3] I find this motion suitable for disposition without oral argument.  LR 78-2.

**Background**[4]

On February 23, 2014, Fred Dein shot his former employee, 42-year old John Benjamin Kraai, in the torso.[5]  An American Medical Response ("AMR") ambulance was nearby when the shooting occurred but was not dispatched in response to a 911 call; instead, Kraai was forced to wait 26 minutes for a Las Vegas Fire & Rescue ambulance to arrive, and he died from otherwise treatable injuries.[6]

The following month, the City of Las Vegas implemented a new 911-dispatch policy that automatically assigned all dispatch calls to Las Vegas Fire & Rescue.[7]  Under the new policy, privately operated ambulance companies, including AMR, receive notification from 911 dispatchers manually and only "if necessary."[8]  Before March 2014, the City operated a "dual-response" system that automatically relayed all dispatch calls to both Las Vegas Fire & Rescue and private contractors, so response times were faster.[9]

Nolan alleges that it was foreseeable that people in need of emergency-medical services would be subjected to needlessly delayed ambulance response times as a result of the City's new 911-dispatch policy[10] and that, as a result of this unlawful policy, Kraai was deprived of his constitutional rights to bodily security and life and she was deprived of her constitutional right to

---

[4] These facts are taken from the complaint and should not be construed as findings of fact.

[5] ECF No. 1 at ¶ 5.

[6] *Id.*

[7] *Id.* at ¶ 3.

[8] *Id.*

[9] Nolan confusingly alleges that the new 911-dispatch policy was announced on March 2, 2014, and became effective the next day, but that the City began testing the new single-response system—and private ambulance companies began experiencing delays in dispatch time—"as early as January 2015," but both of these dates are after Kraii's death.  ECF No. 1 at ¶¶ 24, 26.

[10] *Id.* at ¶ 4.

1    familial relations with Kraai.[11]  Nolan asserts seven claims: (1) a *Monell* claim under § 1983, (2)

2    deliberate indifference under § 1983, (3) deprivation of familial relationships under § 1983, (4)

3    negligence, (5) wrongful death, (6) assault, and (7) battery.  The city defendants move to dismiss the

4    first five claims.

5    **Discussion**

6    **A.      Motion to dismiss standards**

7         Rule 8 of the Federal Rules of Civil Procedure requires every complaint to contain "[a] short

8    and plain statement of the claim showing that the pleader is entitled to relief."[12]  While Rule 8 does

9    not require detailed factual allegations, the properly pled claim must contain enough facts to "state a

10   claim to relief that is plausible on its face."[13]  This "demands more than an unadorned,

11   the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the

12   speculative level."[14]  In other words, a complaint must make direct or inferential allegations about

13   "all the material elements necessary to sustain recovery under *some* viable legal theory."[15]

14        District courts employ a two-step approach when evaluating a complaint's sufficiency on a

15   Rule 12(b)(6) motion to dismiss.  First, the court must accept as true all well-pled factual allegations

16   in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[16]

17   Mere recitals of a claim's elements, supported only by conclusory statements, are insufficient.[17]

18   Second, the court must consider whether the well-pled factual allegations state a plausible claim for

19

20   [11] *Id.* at ¶ 6.

21
22   [12] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

23   [13] *Twombly*, 550 U.S. at 570.

24   [14] *Iqbal*, 556 U.S. at 678.

25
26   [15] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).

27   [16] *Iqbal*, 556 U.S. at 678–79.

28   [17] *Id*.

relief.[18]  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[19]  A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[20]

**B.    42 USC § 1983**

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."[21]  To state a claim under § 1983, a plaintiff must allege that (1) a person acting under color of state law (2) violated a right secured to plaintiff by the Constitution or the laws of the United States.[22]  There is no *respondeat superior* liability in § 1983 actions,[23] so a municipal entity is liable under § 1983 only when the city's custom or policy causes the deprivation.[24]

Nolan invokes the Fourth Amendment and the Fourteenth Amendment's due-process and equal-protection clauses.  At the outset, I note that Nolan fails to state a claim under the Fourth Amendment because that amendment protects against unreasonable searches and seizures, and she does not allege that an unreasonable search or seizure (i.e. deadly force by a police officer) occurred.  Nolan also fails to state an equal-protection claim because the City's 911-dispatch policy is facially neutral, and she does not allege that the policy had a disproportionate impact on an identifiable group

---

[18] *Id.* at 679.

[19] *Id.*

[20] *Twombly*, 550 U.S. at 570.

[21] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal citations and quotations omitted).

[22] *West v. Atkins*, 487 U.S. 42, 48–49 (1988).

[23] *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 692 (1978) (concluding that "a municipality cannot be liable solely because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under §1983 on a *respondeat superior* theory").

[24] *Id.* at 694.

1  or that it was enacted or enforced with a discriminatory motive.[25]  Nolan's allegations are thus most

2  accurately construed as a single Fourteenth Amendment due-process claim for deprivation of a

3  familial relationship and deprivation of life.

4
5  **C.     Nolan's § 1983 claims fail as a matter of law because she does not allege a constitutional deprivation.**

6        The due-process clause "forbids the [s]tate itself to deprive individuals of life, liberty, or

7  property without 'due process of law,'" but it does not "impose an affirmative obligation on the

8  [s]tate to ensure that those interests do not come to harm through other means."[26]  Thus, the state is

9  not generally liable for its failure to act.[27]  Applying these principles in *DeShaney v. Winnebago*

10 *County Department of Social Services*, the United States Supreme Court declined to impose liability

11 against local officials based on their failure to protect a child from deadly abuse at the hands of his

12 father even though they knew about the abuse and failed to remove the child from his father's care.

13       There are two general exceptions to *Deshaney*'s rule that a state's failure to protect does not

14 violate due process: (1) the special-relationship exception, which applies when the state takes a

15 person into its custody and holds him against his will, and (2) the state-created danger exception,

16 which applies "where the state affirmatively places the plaintiff in a dangerous situation."[28]

17 Consistent with these principles, the Ninth Circuit has held that there is no constitutional right to

18 state-provided competent rescue services.[29]

19       Nolan does not allege any facts tending to show that the special-relationship exception

20 applies.  Instead, she appears to argue that the danger-creation exception applies because, though the

21 city defendants did not initially place Kraai in danger, they greatly increased the risk of his injuries

22
23
24 [25] *Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977).

25 [26] *Deshaney v. Winnebago Cty. Dep't of Soc. Servs*, 489 U.S. 189, 195 (1989)

26 [27] *See Id.*

27 [28] *Huffman v. Cty. of Los Angeles*, 147 F.3d 1054, 1058–59 (9th Cir. 1998)

28 [29] *Estate of Amos ex rel. Amos v. City of Page, Arizona*, 257 F.3d 1086, 1091 (2001).

by implementing the new 911-dispatch policy.[30]  Nolan cites the Seventh Circuit's decision in *Ross v. United States* for the proposition that a city policy that arbitrarily cuts off private sources of rescue without providing a meaningful alternative violates due process.[31]

In *Ross*, a deputy sheriff thwarted private rescue efforts to save a twelve-year old boy from drowning.  Though two lifeguards, two firefighters, one police officer, and two civilian scuba divers were present and ready to attempt a rescue, the deputy threatened to arrest the would-be rescuers and positioned his boat to block a possible rescue dive, asserting that only "authorized" fire department divers could attempt the rescue.  When the authorized divers arrived 20 minutes later, the boy was already dead.[32]  The *Ross* court reasoned that the deputy was aware of a known and significant risk of death "yet consciously chose a course of action that ignored that risk," and thus could be held liable.[33]

The Ninth Circuit has neither adopted nor rejected *Ross*,[34] and *Ross* is both non-binding and distinguishable.  Unlike in *Ross*, Nolan does not allege that the city defendants thwarted the private rescue efforts of a private ambulance company or any other person who could have aided Kraai; at most, the city defendants did not satisfactorily facilitate a private rescue.  And because there is no constitutional right to state-provided competent rescue services,[35] that is not enough.

The other cases Nolan cites are also distinguishable because, like *Ross*, they all involve situations where government actors affirmatively interfered with a person's ability to receive help and made that person worse off.  For example, in *Maxwell v. County of San Diego*, the Ninth Circuit held that "[i]mpeding access to medical care amounts to leaving a victim in a more dangerous

---

[30] ECF No. 18 at 6.

[31] *Id.* at 7–9.

[32] *Ross v. United States*, 910 F.2d 1422, 1424–25 (7th Cir. 1990).

[33] *Id.* at 1433.

[34] *Estate of Amos ex rel.*, 257 F.3d at 1092–93 (distinguishing *Ross* and declining to impose liability for allegedly incompetent search-and-rescue efforts).

[35] *Estate of Amos ex rel.*, 257 F.3d at 1091.

situation" and found liability under the danger-creation exception.[36]  In *Maxwell*, police officers securing a crime scene prevented a private ambulance from transporting a severely injured gun-shot victim to a waiting air ambulance.  The court reasoned that, by preventing the victim's ambulance from leaving, the police officers "arguably left [her] worse off" and increased the risk that she faced from her preexisting wounds.[37]  Unlike in *Maxwell*, Nolan does not allege that the city defendants affirmatively delayed Kraai's transport to a medical-treatment facility.

    *Penilla v. City of Huntington Park* is also distinguishable.  Penilla's neighbors and a passerby called 911 for emergency-medical services after they observed Penilla become seriously ill on the porch of his home.[38]  Police officers arrived first, "examined Penilla, found him to be in grave need of medical care, cancelled the request for paramedics, broke the lock and door jamb on the front door of Penilla's residence, moved him inside the house, locked the door, and left" him inside.[39]  Penilla's family found him dead on the floor inside his house the next day.[40]  The Ninth Circuit found that the police officers were potentially liable because their alleged actions significantly increased the risk Penilla faced from his illness by making "it impossible for anyone to provide emergency medical care to [him]."[41]  Unlike in *Penilla*, the city defendants did not increase the risk that Kraai faced from his injury by making it more difficult or impossible for anyone to help him.

    *Ross*, *Maxwell*, and *Penilla* stand for the unsurprising proposition that, when a government actor makes a plaintiff worse off by affirmatively and arbitrarily interfering with his ability to receive potentially life-saving help—in the face of a known and serious danger—that actor bears some culpability.  But Nolan does not allege that any government actor affirmatively impeded any efforts

---

[36] *Maxwell v. Cty. of San Diego*, 697 F.3d 941, 948 (9th Cir. 2010) (emphasis added) (citing *Wood v. Ostrander*, 879 F.2d 583, 589–90 (9th Cir. 1989).

[37] *Maxwell*, 697 at 948.

[38] *Penilla v. City of Huntington Park*, 115 F.3d 707, 708 (9th Cir. 1997).

[39] *Id.*

[40] *Id.*

[41] *Penilla*, 115 F.3d at 710.

to rescue Kraai, only that the city defendants did not do enough to save him or facilitate private rescue efforts. Because there is no federally recognized right to city-provided emergency-medical services—let alone speedy or competent ones—and neither exception to the *Deshaney* rule applies, Nolan's § 1983 claims fail as a matter of law.

**D.    Even if Nolan alleges a constitutional violation, her § 1983 claims nonetheless fail.**

Even if I recognized a constitutional right to city-provided emergency-medical services, City Manager Fretwell and Fire Chief McDonald are immune from Nolan's personal-capacity claims against them. Qualified immunity protects government officials "from liability for civil damages [as long as] their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[42] Fretwell and McDonald's alleged conduct of enacting the new 911-dispatch policy did not violate a clearly established statutory or constitutional right, so their actions are immune. Nolan's official-capacity claims against these defendants also fail because they are duplicative of the claims against the City of Las Vegas,[43] as are Nolan's claims against Las Vegas Fire & Rescue because Las Vegas Fire & Rescue is a department of the City. This would leave the City of Las Vegas as the only remaining defendant to Nolan's § 1983 claims.

Even if I were to find that Nolan has plead a constitutional deprivation, her *Monell* claim fails for the additional reason that her factual allegations directly contradict her general allegation that the City's new 911-dispatch policy caused the alleged violation. Nolan alleges that Kraai died on February 23, 2014,[44] but that the City did not implement the new 911-dispatch policy until March 3, 2014, and did not begin testing the new policy until January 2015.[45] Whether the new dispatch policy became effective in March 2014 or January 2015, it happened after Kraai's death, so it is factually impossible for the new policy to have caused the alleged ambulance delay.

---

[42] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[43] *Kentucky v. Graham*, 473 U.S. 159, 165–166 (1985).

[44] ECF No. 1 at ¶ 5.

[45] *Id.* at ¶¶ 25–26.

1    Because I find that the defects in Nolan's § 1983 claims could not be cured by amendment, I

2    dismiss them with prejudice.

3    **E.     I decline to exercise supplemental jurisdiction over Nolan's state-law claims.**

4    The dismissal of Nolan's § 1983 claims leaves only her state-law claims for negligence,

5    wrongful death, assault, and battery over which I have been exercising supplemental jurisdiction.[46]

6    Supplemental jurisdiction is a doctrine of discretion, not of right.[47]  A federal district court may

7    decline to exercise supplemental jurisdiction over state-law claims if the district court has dismissed

8    all claims over which it has original jurisdiction.[48]  The decision to decline to exercise supplemental

9    jurisdiction under section 1367(c) should be informed by the values of economy, convenience,

10   fairness, and comity.[49]

11   These values compel me to decline to continue exercising supplemental jurisdiction over

12   Nolan's remaining state-law claims.  "[I]n the usual case in which all federal-law claims are

13   eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction

14   over the remaining state-law claims."[50]  This case has not been extensively litigated in this court.

15   Nolan has not yet filed proof of proper service on the Dein defendants, discovery has not closed, and

16   a trial date has not been set.  This case also implicates state-law immunity issues that are best

17   addressed by the state court.  I therefore decline to exercise supplemental jurisdiction over Nolan's

18   remaining state-law claims and dismiss them without prejudice under 28 USC 1367(c)(3).

19                                            **Conclusion**

20   Accordingly, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the city

21   defendants' motion to dismiss **[ECF No. 12]  is GRANTED in part and DENIED in part:**

22

23   [46] *See* 28 USC § 1367.

24   [47] *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172 (1997); *United Mine Workers of*

25   *Am. v. Gibbs,* 383 U.S. 715, 726 (1966).

26   [48] *See* 28 USC § 1367(c).

27   [49] *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

28   [50] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Claims one, two, and three are DISMISSED with prejudice.

Claims four, five, six, and seven are DISMISSED without prejudice.

The Clerk of Court is instructed to CLOSE THIS CASE.

Dated April 21, 2016.

_____
Jennifer A. Dorsey
United States District Judge